**LLOYD v. WEBSTER APARTMENTS CO.**

No. 9429.

Circuit Court of Appeals, Sixth Circuit.

June 4, 1943.

George Stone, of Detroit, Mich. (Harris W. Wienner, of Detroit, Mich., on the brief), for appellant.

Henry H. Sills, of Detroit, Mich. (Herman A. August and Butzel, Levin & Winston, all of Detroit, Mich., on the brief), for appellee.

Theodore L. Thau, of Philadelphia, Pa. (John F. Davis, Homer Kripke, W. Crosby Roper, Jr., and Theodore L. Thau, all of Philadelphia, Pa., on the brief), for Securities and Exchange Commission.

Before HICKS, SIMONS, and McALLISTER, Circuit Judges.

972

McALLISTER, Circuit Judge.

From an order of the district court, confirming a plan of corporate reorganization, Theresa B. Lloyd appeals. A brief review of the reorganization proceedings is necessary for an understanding of the controversy.

On May 4, 1935, a petition of Webster Apartments Company, for reorganization under Sec. 77B of the Bankruptcy Act, 11 U.S.C.A. § 207, was filed and approved. More than a year later, on May 26, 1936, the debtor and the Bondholders' Committee joined in proposing a reorganization plan in which, apparently, stock was to be issued to bondholders and stockholders, in certain proportions. This plan recited that the trustees under a trust mortgage held in a special account, $21,250, which had been deposited for partial payment of bonds maturing March 15, 1931—and $10,429.79, for the interest due thereon.

The plan provided that the above sum of $10,429.79, representing the interest, should, upon reorganization, be applied to payment of the reorganization expenses or taxes, at the direction of the court; and, in the plan, the parties asked the court whether the above-named sum of $21,250 should be distributed pro rata to the holders of bonds maturing March 15, 1931, or should be applied toward the taxes and expenses of reorganization. The plan was referred to a Special Master, who recommended that the fund of $21,250 be transferred to the new corporation to be formed, or applied to the payment of taxes or expenses.

After further proceedings, on December 21, 1936, the matter was again referred to Special Masters, with regard to the nature of the securities to be issued to the holders of securities in the old corporation. On May 21, 1937, they filed their report, recommending the issuance of a certain amount of bonds to bondholders, together with a certain amount of stock, and the issuance of a certain proportion of stock to former stockholders. The Bondholders' Committee excepted to this report, setting forth that because of great income fluctuations to which the property was subject, and rehabilitation expenses, it was inadvisable to create an obligation requiring payment of interest, and that any funded indebtedness upon the property should be eliminated.

On June 15, 1937, appellant, together with others, filed objections, opposing the stand taken by the Committee, and, with appellant's counsel, apparently succeeded in convincing the court and the bondholders that the plan should provide for an issuance of bonds. They, therefore, proposed amendments to the plan and, thereafter, at a hearing in September, 1937, in which appellant's counsel participated, the court disapproved the plan providing for the issuance of stock alone, and continued the cause to November 15, 1937, for the purpose of permitting interested parties to agree on a new plan.

On November 10, 1937, appellant and others filed a petition for leave to intervene in the proceedings, and an order granting such intervention was entered November 18, 1937. Appellant's counsel had participated in the preparation of a new plan, which was filed November 15, 1937. This plan provided for the issuance of bonds and, later, with certain modifications, was finally confirmed by the court on June 21, 1938, after appellant had attended the various hearings during which it was considered, and in which her counsel had participated. This plan, submitted to the court for confirmation, like the plan of May, 1936, also, apparently, requested determination as to what was to be done with the funds of $21,250 and $10,429.79, in the hands of the trustees. When the court confirmed this latter plan on June 21, 1938, it ordered that these funds be distributed pro rata to the bondholders for application on past-due interest on the old bonds.

Much of the foregoing is not revealed specifically in the record, and appeared only in response to questions by the court on the argument on appeal, and counsel's undisputed statements of the relevant facts at that time. Whatever inaccuracy, in unimportant details, there may be in the above recital, arising from an inadequate record, does not affect the disposition of the issues in this case.

On January 1, 1939, the above-mentioned plan of reorganization was consummated, and all of the assets of the Webster Apartments Company were conveyed by the debtor and its trustee to Detroit Webster Hall Company, the new corporation formed to carry out the reorganization. The new company thereupon executed, issued, and delivered its bonds, secured by trust indenture dated January 1, 1939, and shares of its capital stock, to the parties in interest, in conformity with the terms of the plan; and since that date, the new company has owned and operated the Webster

Hall Hotel, the principal asset of the old company.

Approximately a year after the final order of the court in the matter of the confirmation of the plan, in June, 1939, a petition was filed by the new corporation, setting forth that payment to the bondholders, of the funds theretofore directed by the court for application upon the past-due interest on the old bonds, would unduly impair the working capital of the new corporation; and it made application to the court for permission to use these funds in paying 2½% current interest due on the new bonds for the period ending June 30, 1939. The district court, having in its order of June 21, 1938, reserved jurisdiction to enter such further orders as might thereafter be deemed necessary or proper in connection with the carrying out of the plan, thereupon, on June 30, 1939, entered an order, striking out the provisions for the payment of the funds for past-due interest on the old bonds, and substituting a provision directing the new corporation to use such funds in paying 2½% interest to the new bondholders, for the period ending June 30, 1939. The new bonds totaled slightly in excess of a million dollars. Mr. Bevan, then counsel for appellant, was fully informed of this proceeding.

Approximately four months after the last order of the court, and on November 3, 1939, appellant filed a petition "to determine validity of procedure of Detroit Webster Hall Company," setting forth that the new company's management of the property was inefficient, would result in unnecessary expenditures, losses, and evictions; and asking the court to investigate the contemplated actions of the new company. She further set forth that the funds directed by the court, in its order of June 30, 1939, to be paid as interest on the new bonds, should be distributed to the old bondholders; that, upon information and belief, such order was made without due notice to the bondholders and other interested parties; and that it constituted a material and adverse modification of the plan theretofore confirmed, and was entered contrary to law and should be vacated. It is to be remarked that appellant did not allege that the order complained of had been entered without notice to her.

Thereupon, the court entered an order granting appellant leave to intervene; and on January 26, 1940, an amended petition was filed on her behalf, which was not signed by appellant, but by her attorney, on her behalf. This amended petition raised no question with regard to the effect of the lack of notice to bondholders and others concerned (except to incorporate what had been previously alleged on information and belief) at the time of entry of the order of June 30, 1938; but set forth that the amended plan of reorganization, as confirmed by the court, was unfair, inequitable, not feasible, and that the order confirming such plan should be vacated and set aside. Upon issue joined on this petition by the Bondholders' Committee, extensive hearings were held. Finally, on March 2, 1942, the debtor corporation petitioned for entry of final decree; and on March 9, 1942, appellant's petition was denied and final decree entered.

It was not until after the numerous hearings and the filing of briefs on appellant's petition to vacate the order of June 21, 1938, and the subsequent order of June 30, 1939, that a fact, rather remarkable in the case, was discovered. Throughout all the proceedings, prior to appellant's petition to vacate, she had retained counsel and had appeared under the name of Theresa Tannhauser. When her petition to vacate the orders was filed, she then, for the first time, appeared as Theresa Lloyd—having married in the intervening time.

But none of the other parties, their counsel, or the district judge, was aware of the fact that Theresa Tannhauser—who participated personally and through her counsel of record, in the proceedings, who was one of those principally concerned in bringing about the adoption of the plan, and who had been advised personally, or through her counsel, of the order of June 30, 1939—was the same person as Theresa Lloyd, who filed the petition to abrogate everything that she had helped bring about. The counsel who had appeared for her on the petition to vacate was new in the case; her former counsel still appears for her, as of record, there having been no substitution. To add further to this opera bouffe denouement, it seems that counsel of record for Theresa Tannhauser vigorously exerted themselves to preserve the rights of their client in opposing the action of Theresa Lloyd—never suspecting that it was the same person, with other counsel.

The case before us presents no meritorious questions for review. With regard to the orders complained of, appel-

lant, by her acquiescence, personally or through her counsel of record, is bound, and now precluded from raising the issues on appeal.

■ The district court was empowered to enter the order of June 30, 1939, under Sec. 77B, sub. f, of the Bankruptcy Act, upon notice to interested parties. Appellant had notice, and it does not appear from anything in the record, that any other interested parties failed to receive notice.

■ On the allegations that the plan confirmed in the order of June 21, 1938, was unfair, inequitable, not feasible, and so on, none of the evidence taken on the numerous hearings has been transmitted in the record; and these questions cannot, therefore, be reviewed.

While many interesting and important legal questions are presented, it is unnecessary to discuss them, in view of the foregoing conclusions.

In its brief, the Securities and Exchange Commission stressed, especially, what appeared to it to be the irregularity of entering the order of June 30, 1939, without notice to appellant and interested parties. But, when on the argument on appeal, beneath the habiliment of her new name, appellant Lloyd was revealed as petitioner Tannhauser, counsel for the Securities and Exchange Commission, with Arabic wisdom, folded their tents. Appellant would have been well advised to imitate such prudence, and to have done likewise.

The order of the district court is affirmed.